# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SARAH M. MARTIN, individually,
as heir at law of Quinlee Martin,
and as duly appointed Co-Exector
and Personal Representative of the estate
of Delores L. Rabas and the estate of
William A. Rabas,

AND

KIMBERLY A. RYAN, as heir at law and
duly appointed Co-Executor and Personal
Representative of the estate of Delores L.
Rabas and the estate of William A. Rabas,

    Plaintiffs,

v.

FCA, US, LLC,

    Defendant.

Case No. 16-2564-DDC-GLR

## MEMORANDUM AND ORDER

    This diversity suit arises from a motor vehicle accident that occurred on September 14, 2014 near Ellsworth, Kansas. William and Delores Rabas, and Sarah Martin (then expecting with her daughter, Quinlee Martin) were passengers in a 2013 Dodge Durango traveling Southwest on K-156 Highway. Darin Martin, Sarah's husband, was driving. William was in the right front passenger seat, Delores was in the right rear passenger seat, and Sarah was in the left rear passenger seat. Lee Martin, Sarah and Darin's daughter, was riding in the middle rear passenger seat. As the Durango passed through the intersection between K-156 and Highway 14, a vehicle driven by John Anderson struck the driver's side. Darin was unable to maintain control

of the Durango and it rolled. William, Delores, and Sarah (with Quinlee) were ejected from the Durango. William, Delores, and Quinlee were killed. Sarah survived, but she sustained serious injuries. Lee was not injured.

Sarah and her sister, Kimberly Ryan, assert product liability claims against FCA, US, LLC ("Chrysler") under Kan. Stat. Ann. § 60-1901 *et seq.* to recover damages sustained as a result of William, Delores, and Quinlee's death. Sarah and Ms. Ryan are heirs and duly appointed co-executors and personal representatives of William and Delores. Sarah, Kimberly, and Chrysler have reached a settlement of the claims, as described more fully below. As the Kansas Wrongful Death Act requires, the court conducted a settlement apportionment hearing on April 6, 2017. At the hearing's conclusion, the court took the matter under advisement. Plaintiffs supplemented their motion papers with a Supplemental Brief filed one day after the hearing. After reviewing the evidence presented at the hearing and the parties' submissions, the court now is prepared to rule on the proper apportionment of the wrongful death settlement proceeds. The court explains its ruling below.

I.  **Findings of Fact**

At their death, William and Delores had two surviving heirs—their two biological daughters, Kimberly and Sarah. William and Delores had no other children. Delores's father is still living. Her mother is not. Neither of William's parents are living. Though living, Delores's father is not her heir under Kansas law. *See Johnson v. McAthur*, 596 P.2d 148, 153 (Kan. 1979); *see also* Kan. Stat. Ann. § 59-507 ("If the decedent leaves no surviving spouse, child, or issue, but leaves a surviving parent or surviving parents, all of his or her property shall pass to such surviving parent, or in equal shares to such surviving parents . . ."). Sarah and Darin are Quinlee's only surviving heirs at law. *See id.*

Sarah, individually and on behalf of Quinlee, Delores, and William, and Kimberly, on behalf of Delores and William, retained two law firms to pursue a survival action under Kan. Stat. Ann. § 60-1801. They retained the Douthit, Frets, Rouse, Gentile, & Rhodes, LLC law firm of Leawood, Kansas, and the Render Kamas, LC law firm of Wichita, Kansas in April 2016. In May 2016, Sarah and Kimberly retained a third law firm, the Wolff Ardis law firm out of Tennessee, specifically to help prosecute the case.

As part of their representation, Sarah and Kimberly signed a contingency fee arrangement with the Douthit, Frets, Rouse, Gentile, & Rhodes law firm and the Render Kamas law firm. The contingency fee operated on a sliding scale. The agreement provided that Sarah and Kimberly would pay the law firms 35% of the proceeds if the claim settled before filing a petition to recover damages in court. The agreement provided that if a lawsuit was filed and the claim settled more than 90 days before trial, Sarah and Kimberly would pay the law firms a 40% contingency fee. If the claim settled within 90 days of the first scheduled trial date, or if the claim went to trial, Sarah and Kimberly would pay 45% of their net recovery. If there was no recovery, the law firms would receive no fee. The agreement also required the firms to advance all expenses needed to pursue the case. Each firm prepared an itemized expense list, which was presented at the hearing as Exhibit C.

Sarah and Kimberly, on behalf of William and Delores's heirs-at-law, and Sarah, individually and on behalf of Quinlee's heirs-at-law, and defendant Chrysler now have agreed to a Release and Settlement Agreement ("the Settlement Agreement"). The Settlement Agreement provides that Sarah and Kimberly will release their claims against Chrysler in exchange for a sum of money. The agreement also provides that the parties will keep the settlement amount

confidential. Because the court need not reference the amount of the settlement to decide the current motion, this order does not reference it.

At the April 6, 2017 settlement apportionment hearing, the parties asked the court to approve the settlement established by the Settlement Agreement. The parties asked the court to approve an apportionment of the settlement proceeds after the out of pocket expenses of the law firms are removed. Specifically, Sarah and Kimberly asked the court to apportion the settlement proceeds as follows: (1) one sixth to William Rabas; (2) two sixths to Delores Rabas; (3) two sixths to Quinlee Martin; (4) one sixth to Sarah Martin for her injures. The proceeds apportioned to William and Delores are to be split between Sarah and Kimberly, with 50% going to each. The proceeds apportioned to Quinlee are to be split between Sarah and Darin, with 50% going to each. Sarah will keep 100% of the proceeds apportioned for her injuries. The three law firms agreed to split the attorney's fee award into thirds, so each firm would receive one third of the fees. The court considers these requests below.

**II.     Legal Standard**

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As stated above, plaintiff brings this action under the Kansas Wrongful Death Act. The Kansas Wrongful Death Act requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing. Kan. Stat. Ann. § 60-1905. This act provides that the court, first, should allow costs and reasonable attorney's fees for plaintiff's counsel. *Id.* The act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the

heirs of any amount recovered to be made by the trial court according to the loss sustained by each"). The full text of Kan. Stat. Ann. § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act allows for recovery of damages including: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. Kan. Stat. Ann. § 60-1904. The statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transport, Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action). Pecuniary damages are those that "can be estimated in and compensated by money." *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)). Pecuniary damages in a wrongful death action "should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased." *Id.* (quoting *McCart*, 641 P.2d at 391). In Kansas, pecuniary damages "include the losses of such things as marital or parental care, services, training, advice, and financial support." *Id.* Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "mental anguish, bereavement, loss of

society and loss of companionship." *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### III.   Analysis

The court addresses the distribution of the settlement proceeds in the order that Kan. Stat. Ann. § 60-1905 presents them.

#### A.  Costs

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation. *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004). Here, the Douthit, Frets, Rouse, Gentile, & Rhodes, LLC firm represents that their law firm expended $5,069.03 in costs. The Render Kamas firm represents that their law firm expended $270.48 in costs, and the Wolff Ardis firm represents that their law firm expended $7,053.49 in costs. Each firm submitted an itemized statement of their costs. The court has reviewed the costs and finds that they are reasonable and incurred during the litigation of this case. The court thus deducts $12,393.00 from the wrongful death settlement proceeds to compensate plaintiffs' counsel reasonable costs.

#### B.  Attorney's Fees

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable,

6

the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Many of these factors do not influence the court's decision here, but factors three, four, seven, and eight do. The court is particularly concerned with the third factor. Altogether, plaintiffs' counsel seek an award of attorney's fees representing 40% of the gross recovery. The court has found no other instance where our court has approved a 40% contingency fee in a wrongful death case. *See, e.g.*, *Newton v. Amhof Trucking, Inc. et al.*, 385 F. Supp. 2d 1103, 1108 (D. Kan. 2004) (finding that a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Dudley v. Gagne IV*, No. 05-2030-JAR, 2006 WL 314347, at *2 (D. Kan. Feb. 3, 2006) (finding that the attorney's one-third contingency fee with the plaintiff was reasonable); *Turman v. Ameritruck Refrigerated Trans., Inc.*, 125 F. Supp. 2d 444, 447–48 (D. Kan. 2000) ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions.").

And, with the record as it is before the court now, the court cannot say that circumstances in this case warrant a higher-than-normal attorney's fee award. At the hearing, plaintiffs' counsel stated on the record that she preferred not to go into the details of work product, but that she would be happy to answer questions for the court. The court did not ask any questions about

the attorneys' work in the case at that time. But now, reviewing the entire record, the court cannot say determinatively that the work in this case justifies a 40% fee award when, as far as the court can tell, one-third is regarded as the customary fee for similar legal services in Kansas.

This conclusion does not mean that plaintiffs' counsel is not entitled to a 40% fee. Circumstances well may exist that, after evaluating them under the eight-factor test adopted by Kansas law, would justify such a fee. But if they exist, counsel has not presented them to the court. As the court explains below, this order approves a one-third fee award. If plaintiffs' counsel wishes to make an additional submission to justify an award of 40%, they may make additional submissions on the schedule adopted by this order. If counsel elects not to make additional submissions, they shall notify the court of their decision and the court will supplement this order with one directing distribution to plaintiffs on the same basis used in this order.

Factors four, seven, and eight, weigh neither for nor against approving the 40% fee. Counsel obtained what appears to be a favorable result for plaintiffs. And the court believes counsels' experience, reputation, and abilities meet or exceed the skill required by this case. Weighing all the factors together, and subject to future orders on this subject, the court limits counsels' fee award to one third of the settlement proceeds, after expenses.

### C. Apportionment of Settlement

Last, the court considers how to apportion the remaining wrongful death settlement proceeds to the heirs-at-law. Plaintiffs' counsel proposed the following apportionment of the proceeds (repeated from above): (1) one sixth to William Rabas; (2) two sixths to Delores Rabas; (3) two sixths to Quinlee Martin; (4) one sixth to Sarah Martin for her injures. The proceeds apportioned to William and Delores are to be split between Sarah and Kimberly, with 50% going to each. The proceeds apportioned to Quinlee are to be split between Sarah and

8

Darin, her parents, with 50% going to each. Sarah will keep 100% of the proceeds apportioned for her injures.

At the hearing, the court heard testimony from Sarah, Kimberly, and Darin. During her testimony, Sarah confirmed the facts of the crash, the injuries she sustained, and that her parents, William and Delores, and her unborn child Quinlee, passed away as a result of the crash. She confirmed that she hired the three law firms to prosecute her case, and that she understands the attorneys spent a great deal of time investigating and preparing the case both before and after they filed the lawsuit. Sarah also confirmed that she is satisfied with the work the attorneys performed, and that she fully understands the risks and benefits of settling this case. She confirmed that she understands she will receive 58.33% of the proceeds after attorneys' fees and expenses are paid. She testified that she believed the apportionment is fair and reasonable, and that her counsel has reviewed the Settlement Agreement with her. Kimberly and Darin's testimony proceeded in the same manner. Kimberly testified that she understands she will receive 25% of the settlement proceeds. Darin testified that he understands he will receive 16.67% of the settlement proceeds.

None of the witnesses testified about the losses, pecuniary or otherwise, they sustained, but the court understands they are paramount. None of the heirs-at-law object to plaintiffs' proposed apportionment. After considering the evidence at the hearing, the court apportions the settlement as follows:

| | |
|---|---:|
| **GROSS SETTLEMENT PROCEEDS:** | 100% |
| **Reduction to pay approved costs:** | - $12,393.00 |
| **Attorney Fee Award (as approved in this Order):** | 33.33% |
| **Reserve for possible future fee award:** | 6.67% |

**NET SETTLEMENT PROCEEDS AVAILABLE FOR DISTRIBUTION**

    Sarah Martin:      58.33% OF NET SETTLEMENT PROCEEDS AVAILABLE FOR DISTRIBUTION

    Darin Martin:      16.67% OF NET SETTLEMENT PROCEEDS AVAILABLE FOR DISTRIBUTION

    Kimberly Ryan:      25% OF NET SETTLEMENT PROCEEDS AVAILABLE FOR DISTRIBUTION

**IT IS THEREFORE ORDERED THAT** the court apportions the wrongful death settlement proceeds according to and consistent with this Memorandum and Order. The law firm of Douthit, Frets, Rouse, Gentile, & Rhodes, LLC, as plaintiffs' counsel, is directed to distribute promptly the funds represented by the settlement check presented during the hearing.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2017, at Topeka, Kansas.

                                                     **s/ Daniel D. Crabtree**
                                                   **Daniel D. Crabtree**
                                                   **United States District Judge**